May it please the Court, Your Honors. Patrick Hooper for Doctors Medical Laboratory. I will call it in the future DML. I'd like to reserve some time for rebuttal. The District Court dismissed DML's civil rights action here on two grounds. One, that the federal Medicaid regulations do not create enforceable federal rights under the Civil Rights Act. And two, that the defendants have qualified immunity from suit because constitutional rights that are alleged here were not clearly established. I'm going to begin with discussing the importance of the federal Medicaid regulations and then move to the immunity issue. But before doing so, let me put this case in simple and brief terms. The three state controller defendants in this case unlawfully took DML's Medi-Cal checks, actual checks, beginning in August 1997. By November of 1997, they had taken $3 million. After being told expressly by the State Superior Court We are familiar with the history of the case, and I think that's where you can save a lot of time. The fact of the matter is, they gave you a hard time, probably without justification, but you had state processes. You availed yourself of those state processes, and eventually your position was vindicated through those state processes. I don't know why this is something that ought to concern the federal courts. Well, because, first of all, under the federal Medicaid regulations, which are binding in these cases Yeah, but you know regulations don't provide a basis for Medicaid liability. Well, I understand that under Saving Our Valley, the Ninth Circuit has said no. But let me try what I think is critical. You're the Ninth Circuit's committee. I understood that completely, Your Honor. And what the Ninth Circuit has said is Congress can only create federal rights. But our position here is, as Your Honors know, the Constitution can create constitutional rights. And the regulations can mirror or reflect what is in the Constitution. And it's our position here that the Constitution created the right to due process that we all know, and that the federal regulations simply explain the scope of the due process with respect to the Medicaid program. And under 42 CFR section 455.13, it expressly and unequivocally says You know, that's a pretty clever argument. It would be good on a law exam, but the practical effect would be to nullify the rule that regulations don't count. Because every time you get a regulation, you say, Oh, we're claiming due process. And we're not relying on the regulation. We're relying on due process. Regulation merely tells us the process is due. So that that clever argument would essentially overrule. President says that we don't that you can't bring an amnesty action based on regulation. Understood. Let me try one more time. I agree, Your Honor, if there were specific procedures set forth in a regulation and someone was trying to say that that just mirrors due process, then we would be left with what that argument would be. But in this case, the regulation itself says due process. I mean, I I can't imagine a situation where a federal regulation should not be entitled to be considered to be an enforceable right. If this one cannot be. Let's let's move on, though, because there are due process issues here, if I may. Even assuming that the court was correct on the regulations, the regulations may not be ignored. The regulations told any reasonable person, the state controller defendants, the State Department of Health Services. My guess is if you have a chance of winning, you don't have to win without those regulations. Okay. An argument that doesn't involve those regulations. You probably should get on to that because you've only got six minutes and 15 seconds. Well, it's due process, Your Honor. And and there is the process that was due here. The process that was due to regulate. The process that was due, which is fundamental, is notice. At least give notice to the party who you're taking three million dollars from, why you're taking that three million dollars. They took the three million dollars beginning in August 1997. They did not give them an audit report to contain the reasons until March of 1998. Now, I would call that if the shoe were on the other foot here. Seven months? That would be theft. Seven months? Yes. I don't, I didn't add it up. It's long enough. The argument is that for them to hold it for seven months while they're finishing their audit report is a violation of due process? My argument is the failure to even give notice of the reasons why you're holding it. They did not even give notice of the reasons. Remember, as Your Honors well know, due process, notice, plus an opportunity to be heard. No notice. They just came in. They said we're taking your money. We wrote letters. Why are you doing that? Stop doing it. Stop doing it. We're doing it because we're the controller. The state superior court said you can't withhold money. They ignored it. And then various other courts. Every court said you can't do this. But notice was lacking. I don't think, and if you just want to look at the federal regulation by analogy, Your Honor. Okay. What did? Five days. Let's say you didn't get notice. What was your harm? You managed to go into court. You got relief from the state courts. It didn't seem to get any away. It sure did. This client, Your Honor, 90% of its business was Medi-Cal because it dealt with doctors who treated indigent patients. Because they took all of the money, the place couldn't operate. They shut the place down. We tried to get an injunction. The state superior court judge said you can get damages later. Here we are trying to get damages. And now we're being told maybe we can't get damages. Notice is fundamental in this situation. The authors of the regulations, and I have to come back to the regulations because they were trying to impose due process. I'm trying to use a federal agency for whom Your Honors should give some deference. Did you try to get damages in state court? Pardon me? Did you try to get damages in state court? No. No. I did not try to get damages. That's what the Civil Rights Act is for. I would have guessed what the superior court judge meant when he said you can get damages. I would have guessed that he would say, you know, you go to the state court. If you win, you're denied an injunction. But if you prevail eventually, you may be held with damages. You don't have a, in my opinion, you don't have a separate tort cause of action against state agencies in state court. That's what the Civil Rights Act is for, in my opinion. When they violate federal law, as they've done here, due process. Again, notice and an opportunity to be heard. Now, please stay with me, Your Honor. As you know, you said process was given. They were given a hearing finally in June 1999. Now, we're almost approaching the year. They won most of that hearing. The administrative law judge said, no, you don't win some of it. The money wasn't given back, though. The taking, the money wasn't given back until well after the hearing. It wasn't given back until June 2000. So we have between August of 1997 and June 2000 where they're holding $2.2 million. Now, any, I think, basic fundamental due process is maybe they can take the money first. But they have to give you a prompt post-deprivation hearing that is meaningful. And to be meaningful, it would have to say that if you win that hearing, get the money back. I mean, it's more than just. Why isn't that whole stuff you went through in the state court system? Why don't all cases say that having a recourse to the state system is enough? Most respectfully, that's the exact reason why we have the Civil Rights Act, I think, Your Honor. As Your Honor knows, and there's case law on this, the reason the Civil Rights Act was established in the first place was to avoid having a litigant have to go through exhaustive state processes. The Congress wanted someone to be able to say, OK, we can run them through all these state processes. But you also can come straight to federal court. You don't have to exhaust your administrative remedies if you've been deprived of due process here. Assuming that the hearing was timely, nine months, a year or whatever. The fact of the matter is they never gave the money back for three years. You can't hold someone's money for three years. That's why these regulations, which are supposed to interpret due process and come from the federal agency that Your Honors constantly give deference to, emphasize that it has to be temporary. Have you considered that this might be a temporary taking? It is. To me, temporary would be six months. Or under the federal regulations, they give examples of one year. Temporary is not three years where there's no allegation or meaningful allegation of fraud. And as a matter of fact, eight months before they even tell you what the problem is. Where did you get six months from? In the federal regulation, there is the preamble. They talked about one year as being a reasonable time at most for a withholding. I am saying six months because in my opinion, under the facts of this case, when you're taking $3 million from someone, you should be able to figure out whether or not that's a legitimate basis for that within six months. So there's a regulation, there's your opinion that it ought to be six months? The regulation, I think, wins out over my opinion. One year. I will take one year, but I won't take three years. My question is, is it clearly established what the timeframe is for purposes of qualified immunity? If I'm a state Medicaid person, I'm going to be reading federal Medicaid regulations because they're binding on me. I'm going to be reading the preamble to those federal regulations. That specifically said, we don't expect state Medicaid officials to hold money for more than a year. And then we only expect them to do so when they've given notice. And we expect them to give special attention to people who treat high percentages of Medi-Cal patients. So that's our position. And anyone who can read should have known that. I mean, I think it's more basic than that. I think people know you don't take money from someone unless you give them a meaningful opportunity to be heard in a prompt manner. So with respect to clearly established, what are you relying on? The Pressley case in 1996, one of the cases we cited, a district court decision. Again, I think due process itself is enough. But in 1996, the federal district court, I think it was in Virginia. The trouble I have with that is that a lot of this was being litigated. Well, that's what the state, and I don't mean to sound, the state would have you think that, Your Honor. Only the ability to audit was being litigated. We were litigating the ability to audit. There are two issues. Can they take the money and then can they perform audits? What was being litigated only was whether or not they could perform audits. That was up in the air. Whether they could withhold the money was never up in the air. The controller defendants were never allowed to do that. And in fact, in their own agreement with the state in the beginning of July 1998, it specifically said, you shall not withhold money. I don't know how any state official could think they could ever do this, frankly, and comply with any notion, layman's notion or any notion of due process, most respectfully. Thank you. I'll hear from the other side. Good morning. Christina Art from the Office of the Attorney General on behalf of defendants. Let me first address the due process contention. Here defendants are entitled to qualified immunity for the due process allegations. Before you get to qualified immunity, what about the due process violation itself? There was no violation of due process. Why? All of the case law that exists addressing this particular scenario in a Medicaid or Medicare withholding has established that, in fact, there's no due process violation when the state withholds money pending an investigation of fraud. There are six circuit courts who have all reached that contention. I have not found and plaintiff has not presented any circuit court that has reached the contrary position. You represent the controller, right? You don't represent DHS, or do you? There are only individuals named. I represent individuals, both the state controller. All right. You represent Ms. Connell? Yes, I do. And you represent the head of the DHS? I represent Joseph Munso, who was at the time the deputy director of the DHS, as well as other employees, high-level employees in the controller's office. Who has the right to determine whether a fraud investigation should ensue or not? Well, the audit happens first, and plaintiff now concedes that the controller does have the authority to audit, and that is done pursuant to DHS's authority as the Medicaid administrator, and then the investigation continues from there. In other words, both the head of the agency and Ms. Connell both stand in the same position? The Department of Health Services is the California agency responsible for administering the Medicaid program. It delegates authority to perform the audits to the controller's office. But if the allegation is that the controller failed to give notice in a reasonable time and simply sat on this money for three years, that can be tested, can it not? I mean, couldn't that be a due process violation? No, because the case law as it exists holds to the contrary, that in fact while the investigation is ongoing and while legal proceedings are ongoing, the state is entitled to withhold that money. It's entitled to protect the public fisc and save that money for the people who need it. They can hold it for 10 years and just tell the world that, well, they're still auditing, and nobody can question that, nobody can test that. And who gets interest on it? In this case, when the funds were discharged to plaintiff, he received interest. He did get it. It did receive interest. On the $2.2 million? That's correct, Your Honor. And now that subsequent to the briefing in this action, the California Court of Appeal has let stand the administrative decision holding that in fact plaintiff did overbill by over $1 million. And so now California, if it's able to get that money back, will be entitled to interest also. Okay. Thank you. Even if you assume that there is a protected property interest here, plaintiff did receive all the process that was due. He both brought an action for writ of mandate, and he in addition had the administrative hearing as well as his administrative mandamus in the state court from that. In Lugen v. G&G Fire Sprinklers, United States Supreme Court said that the right to bring a civil action is itself adequate process. It's a great case. Here there is in addition there's no clearly established law to the contrary. All of the established law at that time and currently indicates that in fact there's no due process violation. While plaintiff suggests that simply knowing that the due process clause exists is sufficient to put them on notice that their actions were contrary to the due process clause, in fact this element of qualified immunity analysis is to be considered within the specific factual context of the case. Here in this specific factual context, six circuits have determined that there is not a due process violation for withholding pending an audit. None of those six cases, and I don't think there are six circuit cases, all of them interpreted 455.23. All of them there had been notice given within five days of the taking. I think in the one case it was a three-month suspension, not a three-month suspension, not three years. Presley is right on point. It existed at the time. Also the district court the first time around and this Ninth Circuit, when it was reviewing the district court's decision the first time around, expressly acknowledged that there was a property right that was protected. It's right in the Ninth Circuit's opinion at 306 F. 3rd, and it's right in the district court decision, and I can get that. So now the district court has said, well, apparently there is a property right. I don't know how the district court reached that. But if this is not a denial of due process, I can't think of a case that would be a denial of due process. And now you've got interest on the 2.2 withheld. Yes. So what are you asking for by way of damages beyond that? Well, I think what we're trying to say is they forced this laboratory out of business, and what was a valuable ongoing business became a business that was worth nothing. It had to lay off all the employees, and it was a taking of the complete business. That's what happened. If they do it the right way and due process given, they would not have taken 3 million. At most, they might have taken a million, and there would have been enough money to keep operating. There was not enough money operating when you take all the money and don't tell the people why. Thank you very much, Your Honors. Thank you. HSRU's testimony. We're adjourned. All rise. This court in this session stands adjourned.
judges: Kozinski, O'scannlain, Silverman